```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION
```

Quendalyne Alexander              )
                                  )
        Plaintiff,                )
                                  )
                                  )
    v.                            )  Case No. 16 C 2410
                                  )
                                  )
Villages of Round Lake Park and   )
Round Lake, Municipal Corporations, )
Officer Matthew Lyons, Commander  )
Anthony Colon, and Officer Brandon )
Gullifor,                         )

        Defendants.

## MEMORANDUM OPINION AND ORDER

In the early morning hours of March 7, 2015, officers Matthew Lyons and Anthony Colon of the Village of Round Lake Park police department responded to a 911 call reporting that a woman had jumped from a window and was lying in the snow. The officers arrived at the scene and found the woman, later identified as Natasha Alexander, unconscious and bleeding. Plaintiff—Natasha's cousin—was in a car parked in the driveway of plaintiff's sister's house, a few doors down from where Natasha lay. Officer Colon spoke briefly with plaintiff, then asked her to get into Officer Lyons's squad car to get out of the cold. Plaintiff got into the car, and Officer Lyons pulled off, leaving Officer Colon at the scene.

As Officer Lyons transported plaintiff to the police station, an argument erupted in the squad car, prompting Officer Lyons to pull over into the parking lot of a nearby restaurant and call for backup. Officer Colon and Officer Brandon Gullifor of the Village of Round Lake Police Department arrived at the scene, and together the officers removed plaintiff from the car and handcuffed her. Later, she pled guilty to domestic battery of Natasha and battery of Officer Lyons. Plaintiff brings this action under 42 U.S.C. § 1983, claiming that the officers used excessive force during her arrest.

Before me are defendants' motions for summary judgment, which argue that on the undisputed record, the force they used was reasonable under the circumstances; and that even if the force the officers used was excessive, they are entitled to qualified immunity. For the reasons that follow, I conclude that even when all factual disputes are resolved in plaintiff's favor, the record would not allow a reasonable jury to find that defendants violated plaintiff's constitutional rights, and I grant summary judgment on that basis.

I.

Although the parties present starkly different accounts of the events culminating in the challenged use of force, I assume the facts are as plaintiff recounts them wherever the record reasonably allows. On the night in question, plaintiff was at her

sister's house for a birthday celebration when her cousin Natasha arrived in a "rageful" state. Pl.'s Dep., DN 55-1 at 44, 51. Plaintiff tried to calm Natasha down, but matters escalated, and plaintiff pushed Natasha onto a couch. Natasha "charged at" plaintiff, "busting" plaintiff's nose. *Id*. at 55, 66. Plaintiff went to the bathroom to tend to her nose, then left the house and sat in a car in the driveway. *Id*. at 57, 65-66. As she sat in the car, Officer Colon approached and asked, "why was [Natasha] hiding in the bushes?" *Id*. at 71. Plaintiff saw Natasha talking to police outside the house. *Id*. at 70. Natasha was sitting on the curb and shaking her head, and she "didn't look like herself" but was not bleeding and did not look injured. *Id*. at 72, 74. Officer Colon asked plaintiff to step inside his car "[b]ecause it [was] cold outside, and [he] want[ed] to talk to [her]." *Id*. at 73, 75. Plaintiff agreed to get in the back of the squad car. *Id*. at 74, 82. Officer Lyons immediately pulled off. *Id*. at 76.

Plaintiff testified that she told Officer Lyons that she wanted to call her sister to tell her where she was being taken. Officer Lyons then "flipped out" and started screaming that she could not use her "f***ing cell phone in [his] car." Officer Lyons pulled over, "smashed the door open," and told plaintiff to "step the f*ck out" of his car. Plaintiff remained "completely calm" but refused to get out. *Id*. at 87-88. Officer Lyons was trying to "snatch" plaintiff out of the car when Officers Colon and Gullifor

3

arrived. *Id*. at 89. The officers continued to tell plaintiff to get out of the car. Plaintiff refused to get out, but she remained calm and did not yell, swear, or kick at the officers. *Id*. 89-90, 97.

Plaintiff testified that the officers then forced her out of the car and "slammed" her to the ground, injuring her face, elbow, and knee. *Id*. at 94, 141-143. As plaintiff lay on the ground, the officers put their knees on her back and pulled at her arms. *Id*. at 96-98. She told the officers they were hurting her, but they did not stop, so she "just played dead." *Id*. at 96. Sometime later, plaintiff was taken to the hospital in an ambulance, but she refused medical care after seeing Officer Lyons laughing and joking with hospital staff. *Id*. at 105. She told a doctor, "[j]ust send me home. Send me home or take me to jail." *Id*. at 109, 111.

A portion of plaintiff's arrest was captured by the "dash cam" device in Officer Gullifor's squad car. The video recording begins as officer Gullifor pulls up behind Officer Lyons's parked squad car in the parking lot of The Pizza Place restaurant, where Officer Lyons had pulled over. *See* Exh. D to Round Lake Park Def.'s L.R. 56.1 Stmt.; Pl.'s Dep. at 27. Officer Gulliver then approaches Officer Lyons's vehicle on foot, where one officer can be seen standing off to the side of the vehicle, while another officer not visible on screen can be heard arguing with plaintiff. Plaintiff can be seen and heard screaming obscenities at the

4

unseen officer from within the vehicle. The officer tells her, "I'm about two seconds away from cuffing you." Plaintiff responds, "cuff me, cuff me motherf***er," and continues to scream obscenities. The standing officer then opens the rear passenger's side door, and plaintiff yells "get your motherf***ing hands off me." An officer tells her, "you gotta get cuffed," and she screams "don't f***ing touch me" then begins kicking the officer at the rear passenger door while continuing to scream. The officers can be heard to shout "stop resisting!" multiple times as plaintiff continues to swear and kick. The audio then cuts out as the video shows the officers pull plaintiff out of the car and onto the ground.

Most of what occurs next is outside the range of the video camera. Still, two of the officers can be seen to struggle with plaintiff on the ground for approximately fifteen seconds. Thereafter, the two officers stand up while the third remains outside the camera's view. Several minutes go by, during which time an ambulance arrives. (The ambulance cannot be seen on the video, but its flashing lights can be seen in reflection off of the squad car). The officers then spend several minutes struggling to get plaintiff back into the squad car as she stands at the open rear passenger door, then sits partially inside, screaming

obscenities at the officers.[1] Finally, the officers get plaintiff into the car and drive away.

Plaintiff was charged with multiple felony offenses based on the events of March 7, 2015. She ultimately pled guilty to a misdemeanor charge of battery, admitting that she kicked Officer Lyons, and a misdemeanor charge of domestic battery, admitting that she struck Natasha.

## II.

Summary judgment is appropriate when the pleadings, depositions, admissions, and other evidence of record show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). I must consider the record as a whole and construe all facts in the light most favorable to plaintiff. *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003). The Supreme Court has added a caveat, however, that the non-movant's version should not be credited when it is clearly contradicted by a video recording capturing events that is in the record. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

Defendants argue that the dash cam recordings, together with plaintiff's guilty pleas and her admissions in conjunction with

---

[1] The audio device that captured the beginning of the interaction remains off-line, but some audio can be heard at this point, which I assume was recorded by a device within Officer Gullifor's squad car.

6

those pleas, establish as a matter of law that the force the officers used in the course of her arrest was reasonable. Plaintiff does not dispute that the dash cam footage "partially depict[s] some of the events in question," but she insists that it does not discredit her version of the facts, and that if her version is accepted, a jury could find that the force the officers used was excessive.

It bears emphasis that plaintiff does not challenge the legality of her arrest (other than the force the officers used), and indeed, she concedes that "a claim...for false arrest or malicious prosecution would not lie in this case." Pl.'s Resp., DN 62 at 2 n. 1. This is important because "[a]n officer who has the right to arrest an individual also has the right to use some degree of physical force or threat of force to effectuate the arrest." *Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016). By conceding that the officers had a right to arrest her, plaintiff distills the inquiry down to a single question: was the force the officers used reasonable under the circumstances? To answer that question, I consider several factors, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [she] is actively resisting arrest or attempting to evade arrest by flight." *Id*. (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

The first *Graham* factor cuts in defendants' favor. The undisputed record shows that the reason the officers took plaintiff into custody was her suspected involvement in a domestic battery—a violent crime. Plaintiff insists that she was not under arrest when she got into Officer Lyons's squad car and emphasizes that the officers neither restrained her nor patted her down at that time. But plaintiff does not explain how her arrest status is relevant to the first *Graham* factor, which focuses on the nature of the suspected crime. At all events, plaintiff was clearly in police custody at least as of the time Officer Lyons refused her request to return to her sister's house, s*ee Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968) (seizure occurs when officer "has in some way restrained the liberty of a citizen"), and she does not challenge either the lawfulness of her detention or the officers' authority to arrest her and place her in handcuffs.

Moreover, even assuming that the officers did not know whether plaintiff was the aggressor or the victim in the suspected domestic battery, that ambiguity at most neutralizes the weight of the first *Graham* factor in defendants' favor; it does not tip the balance in plaintiff's direction. Meanwhile, the second and third factors—plaintiff's physical aggression towards the officers and her active resistance to their attempts to restrain her—are firmly in defendants' favor. Indeed, even accepting plaintiff's characterization of her demeanor while riding in Officer Lyons's

8

squad car, the dash cam evidence establishes beyond reasonable dispute that by the time the officers attempted to restrain her, she was screaming and kicking at them and thrashing on the ground as they tried to handcuff her.

Plaintiff correctly observes that the videotape does not show a complete picture of the events. Still, any reasonable factfinder viewing that evidence would have to conclude that plaintiff actively resisted the officers' efforts to gain control over her. The Seventh Circuit acknowledges that an individual who resists arrest can pose "an immediate threat" to arresting officers. *Williams*, 809 F.3d at 944 (affirming summary judgment of no excessive force where officers pushed plaintiff against his car and handcuffed him after he refused to comply with commands to turn around and put his hands behind his back during a traffic stop). Moreover, when considering the reasonableness of the force used, courts must "remain cognizant of the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Id*. (citations omitted). Here, plaintiff's kicking at the officers warranted the use of some force to ensure their own safety in the course of an arrest plaintiff does not claim was otherwise unlawful.

Moreover, the force plaintiff describes—pulling her out of the car and onto the ground, placing their knees on her back, and

9

pulling at her arms to handcuff her—cannot reasonably be compared to the force officers used in most of the authorities she cites. In *Phillips v. Community Insurance Corp.*, 678 F.3d 513 (7th Cir. 2012), for example, officers shot at a passively resisting, semi-conscious suspect with a "shoulder-fired, semi-automatic firearm that fires polyurethane bullets with a force equivalent to a .44 magnum pistol." *Id*. at 518. And in *Cyrus v. Town of Mukwonago*, 624 F.3d 856 (7th Cir. 2010), officers repeatedly deployed a Taser on a mentally-ill trespasser they knew to be unarmed, including while two officers held him face-down while he lay passively on the ground. Unlike in these cases, plaintiff does not claim that the officers used a firearm, a Taser, or any other weapon on her, nor does she suggest what lesser force the officers might have used to gain control over her, given the nature of her active resistance.

It is true that in *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003), the Seventh Circuit reversed summary judgment for the defendant in view of the plaintiff's testimony that three officers "grabbed," "jerked," "slammed," and "forced" her arm and wrist into handcuffs in the course of a half-hour struggle to arrest her, during which time she claimed she did not resist. While the force the plaintiff described in *Payne* is arguably comparable to the force at issue here, the circumstances of the two cases are different in several key respects. First, there was no videotape in *Payne* to discredit the plaintiff's claim that she "volunteered

to be arrested" and did not argue with the defendant officer or resist arrest. *Id*. at 779. Accordingly, the *Payne* court credited the plaintiff's testimony that she did not yell or swear at the officer, did not refuse to obey his orders, and did not engage in other conduct the defendant cited as a basis for probable cause. Second, because the *Payne* plaintiff challenged the existence of probable cause, and the court concluded that the evidence warranted a trial on that issue, the court could not properly assume that the officers were entitled to use *any* force against the plaintiff. The latter distinction also obtained in *Chelios v. Heavener*, 520 F.3d 678, 689 (7th Cir. 2008) (plaintiff entitled to trial on wrongful arrest claim). *Cf. Williams*, 809 F.3d at 944 (right to arrest an individual entails the right to use some force to effectuate arrest). Here, as noted above, plaintiff disclaims any argument that the arrest itself was wrongful.[2] And the videotape evidence "blatantly contradict[s]" plaintiff's testimony

---

[2] Indeed, a claim for wrongful arrest on the facts here would presumably be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). I am not persuaded, however, that her excessive force claim is *Heck*-barred. A judgment in her favor on this claim is not necessarily incompatible with her guilty pleas, nor does it rest on factual allegations that conflict with her admissions in connection with those pleas. *See McCann v. Neilsen*, 466 F.3d 619 (7th Cir. 2006) (excessive force claim not incompatible with the plaintiff's conviction for aggravated assault of a peace officer); *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006) (rejecting an application of *Heck* that would "imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages").

that she remained calm and did not yell or kick at the officers as they tried to remove her from Officer Lyons's squad car, *Williams*, 809 F.3d at 942, and establishes that she actively resisted arrest in a manner that a reasonable jury would find justified the force she claims the officers used.

### III.

Because I conclude based on the foregoing that no constitutional violation occurred, I need not proceed further on the issue of qualified immunity. Defendants are entitled to summary judgment.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: May 16, 2018